# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Joe Hand Promotions, Inc., | ) |
|             Plaintiff, | ) Civil Action No.: 3:17-cv-01319-MBS |
| vs. | ) **ORDER AND OPINION** |
| Collective Minds LLC, et al., | ) |
|             Defendants. | ) |

On May 22, 2017, Plaintiff Joe Hand Productions, Inc. ("Plaintiff") filed an action in this court against Defendants Collective Minds, LLC, d/b/a/ Mynt Lounge & Bistro (the "Establishment"), and Benjamin Rogers (collectively "Defendants"). Plaintiff alleges that it owned the exclusive television distribution rights for the *Ultimate Fighting Championship® 201: Lawler v. Woodley* broadcast (the "Program") and that Defendants exhibited the Program at a commercial establishment without paying a licensing fee to Plaintiff. Plaintiff has asserted claims under the Communications Act, 47 U.S.C. § 605, and the Cable Communications Policy Act, 47 U.S.C. § 553. Neither Defendant filed an answer or otherwise responded to Plaintiff's Complaint. On July 7, 2017, in response to Plaintiff's request, the clerk entered default as to both Defendants. On August 16, 2017, Plaintiff filed a Motion for Default Judgment.

## FACTS

The following facts are alleged in Plaintiff's Complaint (ECF No. 1), and due to Defendants' default, are accepted as true: Defendant Collective Minds, LLC is a South Carolina business that operates, maintains and controls the establishment known as Mynt Lounge & Bistro located at 2732 Decker Boulevard, Columbia, SC 29206. *Id.* at 1–2. Defendant Benjamin Rogers is a South Carolina resident and an officer, director, shareholder, member and/or principal of the

entity owning and operating the Establishment. *Id.* at 2. Plaintiff, a Pennsylvania corporation, held the exclusive commercial distribution rights to the broadcast of the Program, including all undercard bouts and the entire television broadcast, which took place on July 30, 2016. *Id*. at 1. Since 2001, Plaintiff has been the exclusive domestic distributor for the world's premier mixed martial arts company, the Ultimate Fighting Championship®. *Id*. at 3. By contract, Plaintiff was granted the exclusive right to license and distribute the Program to commercial establishments throughout the United States. *Id*. Prior to the broadcast of the Program, Defendants chose not to contract with Plaintiff nor pay a fee to Plaintiff to obtain the proper license or authorization. *Id.* At no time did Plaintiff give Defendants license, permission, or authority to receive and exhibit the Program in their Establishment. *Id*. By unauthorized satellite transmission or, alternatively, by unauthorized receipt over a cable system, Defendants willfully intercepted or received the interstate communication of the Program or assisted in such action. *Id.* Defendants then unlawfully transmitted, divulged, and published said communication, or assisted in unlawfully transmitting, divulging and publishing said communication to patrons in the Establishment. *Id*. At the time of the wrongful conduct, Defendants' agents, servants and employees were acting within the scope of their employment and authority. *Id*.

According to a sworn affidavit, Carolyn D. Harding, an auditor for Plaintiff, went to Mynt Lounge & Bistro on July 30, 2016. ECF No. 10-5. Upon arriving, Harding paid a cover charge of $10 to enter the Establishment. *Id.* Inside, she observed eight televisions, all of which eventually displayed the Program. *Id.* She stated that the approximate capacity of the establishment was two hundred and fifty people. *Id.* Harding avers that on three separate occasions that night she counted eighty-five (85), one hundred and ten (110), and one hundred and twenty (120) patrons in the Establishment, respectively. *Id.* In his sworn Affidavit in Support of Plaintiff's Motion for Default

Judgment, Plaintiff's President, Joe Hand, Jr., stated that the commercial sublicense fee for a commercial establishment with a maximum capacity of two hundred and twenty-six (226) to two hundred and fifty (250) persons would have been $2,100. ECF No. 10-2. Plaintiff also noted that the Establishment advertised the program on its Facebook page. ECF No.10-1 at 6.

## DISCUSSION

**A.     Liability**

Under 47 U.S.C. § 605(a), "no person receiving . . . any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception . . . to any person other than the addressee, his agent, or attorney." Any person aggrieved by such a violation may bring a civil action to obtain an injunction and to recover damages, costs, and attorney fees. 47 U.S.C. § 605(e)(3). The aggrieved party may recover actual damages or statutory damages between $1,000 and $10,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(i). Furthermore, if the court finds that "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," the court may increase the damages by an amount not more than $100,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(ii).

Under 47 U.S.C. § 553(a)(1), "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Any person aggrieved by such a violation may bring a civil action to obtain an injunction and to recover damages, costs, and attorney fees. 47 U.S.C. § 553(c). The aggrieved party may recover actual damages or statutory damages between $250 and $10,000 for all violations involved in the action. 47 U.S.C. § 553(c)(3)(A). Furthermore, if the court finds that

"the violation was committed willfully and for purposes of commercial advantage or private financial gain," the court may increase the damages by an amount not more than $50,000. 47 U.S.C. § 553(c)(3)(B).

The Seventh Circuit has held that § 605 and § 553 employ mutually exclusive categories, specifically that a "communications service offered over a cable system" is not a "radio communication." *United States v. Norris*, 88 F.3d 462, 469 (7th Cir. 1996). In other words, a person who steals cable services at the point of delivery is liable only under § 553, even if the signals were transmitted by radio at some earlier point. On the other hand, the Second Circuit has disagreed and held that some cable transmissions may also constitute "radio communications" under § 605. *International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2d Cir. 1996). The Fourth Circuit has not considered the question. Consistent with other courts in the District of South Carolina, this court finds that the reasoning of *Norris* is more persuasive. *See Columbia Cable TV Co., Inc. v. McCary*, 954 F. Supp. 124, 128 (D.S.C. 1996).

As a result, Defendants are liable under § 605 only if they exhibited radio communications without authorization and liable under § 553 only if they received cable communications without authorization. Plaintiff has alleged that the Program was received and exhibited without authorization. ECF No. 10-1 at 5. However, Plaintiff notes that the Program could have been received through various media, including radio, satellite, or cable. *See* ECF No. 1 at 3; ECF No. 10-2 at 3–4. Having been denied the benefit of discovery, Plaintiff requests to proceed under § 605. ECF No. 10-1 at 5. The court finds this to be a reasonable solution. The court finds that Defendants violated 47 U.S.C. § 605 by exhibiting interstate radio communications without authorization to customers at a commercial establishment. Furthermore, based on Plaintiff's well-

pleaded allegations, the court finds that the violation was committed willfully and for the purposes of commercial advantage or financial gain.

**B.     Damages**

Plaintiff elects to recover statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff seeks an award of $5,000. South Carolina district courts have often used an iteration of the license fee to calculate appropriate damages. *Joe Hand Promotions, Inc. v. Double Down Entm't, LLC*, No. 0:11-CV-02438-MBS, 2014 WL 994382, at *7 (D.S.C. Mar. 13, 2014) (citing *Joe Hand Promotions, Inc. v. Precint Bar-DAXLAM, Ltd.,* No. 3:10–CV–00199–CMC, 2010 WL 3420189, at *3 (D.S.C. Aug.23, 2010) (determining that an award of $5,000 was appropriate, which equaled five to six times the license fee of $875, as such award "is a sufficient deterrent"); *Joe Hand Promotions, Inc. v. Sheedy*, No. 4:08-CV-1797-TLW-TER, 2011 WL 4089534, at *4 (D.S.C. July 29, 2011) (determining that an award of $5,000 was appropriate, which equaled approximately 5 times the license fee of $975)). As explained above, it would have cost $2,100 for Defendants to purchase the rights to exhibit the Program at the Establishment. The court finds that an award totaling approximately three times the applicable license fee effectively promotes deterrence in this instance. Accordingly, the court finds that an award of $5,000 fairly approximates the actual harm to Plaintiff resulting from Defendants' unauthorized exhibition of the Program.

Plaintiff also seeks enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii) because Defendants' violation was committed willfully and for the purposes of commercial advantage or financial gain. ECF No. 10-1 at 11. Plaintiff requests $25,000. *Id.* Plaintiff explains that their primary source of revenue is the sublicense fee charged to authorized commercial establishments for the right to broadcast closed circuit sports and entertainment programming, such as the Program. ECF No. 10-1 at 8. Plaintiff argues that much of its revenue is lost due to unauthorized

commercial exhibition of its programs because legitimate bars and restaurants cannot afford to compete with "pirate" bars and restaurants. *See* ECF No. 10-2 at 4. Plaintiff further asserts that authorized commercial establishments suffer financial loss from such illegal activities as well. ECF 10-1 at 10; ECF No. 10 at 4. As a result, Plaintiff contends, authorized commercial establishments are forced to either cease the legitimate purchase of programming from Plaintiff and other such rights holders, or begin to pirate programs like Defendants. *Id.*

The court agrees that an enhanced award is necessary to deter the willful piracy of Plaintiff's programs. In light of the fact that the Defendants imposed a cover charge and advertised the Program on social media, the court finds that enhanced damages in the amount of $25,000 provides just and adequate deterrence for such willful violations. Accordingly, the court awards total damages in the amount of $30,000.

**C.     Costs and Attorney Fees**

The court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Because Plaintiff is an aggrieved party that has prevailed, it is entitled to recover costs and attorney fees. Plaintiff submitted an affidavit of its South Carolina counsel in support of its request for costs and attorney fees. ECF No. 10-7. The court grants costs to Plaintiff in the amount of $450.00, including filing fees and process service costs.

In this default matter, no one has appeared to challenge the attorney fees Plaintiff seeks. Nonetheless, in determining what constitutes a reasonable number of hours and the appropriate hourly rates, the court must consider the following factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5)

the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney fees awarded in similar cases. *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir. 1978). Although the court must consider all twelve of the factors, the court is not required to rigidly apply these factors, as not all may affect the fee in a given case. "[T]hese factors should be considered in determining the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a reasonable fee." *E.E.O.C. v. Servo News Co.,* 898 F.2d 958, 965 (4th Cir. 1990). In determining whether a rate is reasonable, the court is to consider "prevailing market rates in the relevant community." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

The information Plaintiff provided, coupled with the court's knowledge of rates in work of this type in this district, supports attorney fees in the amount of $1,500. Based on the information and supporting documents before the court at this time, the court concludes that the judgment against Defendants should include an award of costs and attorney fees in the amount of $1,950 ($450 costs plus $1,500 attorney fees).

## **CONCLUSION**

Plaintiff's Motion for Default Judgment is granted. The court finds that Defendants willfully violated 47 U.S.C. § 605. Judgment in favor of Plaintiff is entered against Defendants, jointly and severally, in the amount of $31,950 comprising $30,000 in damages and $1,950 in costs and attorney fees.

**IT IS SO ORDERED.**

                                                                                      s/ Margaret B. Seymour
                                                                                  The Honorable Margaret B. Seymour
                                                                                  Senior United States District Judge

Columbia, South Carolina
October 19, 2017